**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

NICHIA CORPORATION,

        Plaintiff,

    v.

EVERLIGHT ELECTRONICS CO., LTD.,
EVERLIGHT AMERICAS, INC., ZENARO
LIGHTING, INC. and ZITROZ LLC,

        Defendants.

Case No. 02:13-cv-702-JRG

JURY TRIAL DEMANDED

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**PURSUANT TO LOCAL PATENT RULE 4-5(b)**

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II.  APPLICABLE LAW .................................................................................................... 1

III.  THE DISPUTED CLAIM TERMS AND PHRASES ...................................................... 2

    A.  The '589 Patent (Dkt. No. 52, Exhibit A) ............................................................ 2

        1.  "wall formed to extend across the bottom surface of the recess" ...............2

        2.  "notch which is formed by cutting off a portion of an edge of the
            first lead electrode" ...................................................................................4

            i.  The lead electrode must exist before the notch can be cut
               into it .............................................................................................4

            ii.  Cutting must be construed as something other than
               punching .........................................................................................6

    B.  The '870 Patent (Dkt. No. 52, Exhibit B) ............................................................ 7

        1.  "adjacent to the side surface in the recess" .................................................7

        2.  "a wall portion" .........................................................................................9

        3.  "extends inwardly in a direction toward a center of the recess" ...............11

        4.  "means for electrically connecting said light emitting element to
            said positive lead electrode…[and] to said negative lead electrode" ........14

        5.  "a protective element…to protect said light emitting element from
            overvoltage" ............................................................................................16

    C.  The '863 Patent (Dkt. No. 52, Exhibit C) .......................................................... 16

        1.  "top surface" ............................................................................................16

        2.  "a transparent member that covers the light emitting element and
            the top surface of the insulating board" ...................................................17

        3.  "the through hole of the insulating board has an inner wall that is
            formed in a substantially stepped rectangle corresponding to the
            substantially stepped rectangle of the metal member" .............................18

    D.  The '250 Patent (Dkt. No. 52, Exhibit D) .......................................................... 20

        1.  The preambles of claims 1 and 17 are not claim limitations ....................20

i

2.     "lead" ..................................................................................................21

3.     "lead frame," "resin," "resin part," "resin package," and "resin-molded body" .............................................................................................23

4.     "the at least one lead comprises a step on a bottom surface or outer surface thereof" ....................................................................................24

5.     "a portion of the resin part is disposed over a portion of the plating on the upper surface of the at least one lead" ............................................25

6.     "notch" ...............................................................................................26

7.     "cutting the resin-molded body and the plated lead frame along the at least one notch" ..................................................................................27

8.     "planar" ..............................................................................................28

9.     The phrase "light reflecting material" is indefinite....................................29

IV.     CONCLUSION .......................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Asyst Techs., Inc. v. Empak, Inc.*,
  268 F.3d 1364 (Fed. Cir. 2001)..............................................................................14

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
  512 F.3d 1338 (Fed. Cir. 2008)..............................................................................12

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002)..........................................................................20, 21

*CIAS, Inc. v. Alliance Gaming Corp.*,
  504 F.3d 1356 (Fed. Cir. 2007)..............................................................................25

*Int'l Rectifier Corp. v. IXYS Corp.*,
  361 F.3d 1363 (Fed. Cir. 2004)................................................................................8

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991)..............................................................................15

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  248 F.3d 1303 (Fed. Cir. 2001)..............................................................................14

*Merck & Co. v. Teva Pharms. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005)................................................................................9

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014)......................................................................................29, 30

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)..............................................................................16

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*,
  386 F.3d 1133 (Fed. Cir. 2004)................................................................................3

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)........................................................1, 2, 4, 6, 10, 23, 26

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
  182 F.3d 1298 (Fed. Cir. 1999)..............................................................................20

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
  358 F.3d 870 (Fed. Cir. 2004)..............................................................17, 22, 24, 25

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997)..........................................................................17, 24

*Vistan Corp. v. Fadei USA, Inc.*,
   2012 WL 1496099 (N.D. Cal. Apr. 27, 2012) ...................................................................12, 14

**STATUTES**

35 U.S.C. § 112, ¶ 6 .............................................................................................................14, 15

Defendants Everlight Electronic Co., Ltd., Everlight Americas, Inc., Zenaro Lighting, Inc., and Zitroz (collectively, "Defendants") submit this Responsive Claim Construction Brief pursuant to Local Patent Rule 4-5(b) and the schedule set forth in the Court's First Amended Docket Control Order (Dkt. No. 59).

## I.     INTRODUCTION

Defendants' proposed constructions stay true to the particular configurations of the semiconductor packages and methods of manufacture set forth in the patents-in-suit.  To the contrary, Plaintiff Nichia Corporation's ("Nichia's") proposed claim constructions ignore the intrinsic evidence and instead rely on the improper testimony of Nichia's consultant on one hand to free Nichia of the express limitations of the claims, and on the other hand to limit the claims to particular embodiments disclosed in the patents to avoid what is otherwise invalidating prior art.

## II.    APPLICABLE LAW

The words of a patent claim "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citations omitted).  This is the meaning they would have to a person of ordinary skill in the art in view of the intrinsic evidence, *i.e.*, the claims, the specification, and the prosecution history.  *Id.* at 1313.  The specification "is always highly relevant to the claim construction analysis."  *Id*. at 1315.  It is "the single best guide to the meaning of a disputed term" and is usually "dispositive."  *Id*.  While courts are not precluded from considering extrinsic evidence such as dictionary definitions when construing claims, such evidence cannot be "used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id*. at 1324.

III.     THE DISPUTED CLAIM TERMS AND PHRASES

   A.     The '589 Patent (Dkt. No. 52, Exhibit A)

   1.     "wall formed to extend across the bottom surface of the recess"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| a [dividing] [1] structure that protrudes from the bottom surface of the recess and that extends from one point on the perimeter of the recess to another point on the perimeter of the recess | a protruding structure that extends from one side of the bottom surface of the recess to the other side |

The parties are generally in agreement regarding the construction of this phrase, which appears in every independent claim of the '589 patent.  The only dispute is where the claimed "wall" extends to and from.  Defendants' propose a construction "that stays true to the claim language and most naturally aligns with the patent's description of the invention."  *Phillips*, 415 F.3d at 1316.  Nichia's proposed construction, however, excludes one of the preferred embodiments disclosed in the specification, and therefore cannot be correct.

Nichia contends that its proposed construction, "a protruding structure that extends from **one side** of the bottom surface of the recess **to the other side**, is "fully supported by the specification."  Nichia's Opening Brief, Dkt. No. 52, at 3 (emphasis added).  In support of this contention, Nichia cites to, *inter alia*, Figures 9A and 9B from the '589 patent (reproduced and annotated below).

---

[1]      Since submitting the Joint Claim Construction and Prehearing Statement (Dkt. No. 50), Defendants have determined that the inclusion of "dividing" in Defendants' proposed construction is unnecessary in light of the claim language.  Defendants therefore are removing the term "dividing" from their proposed construction.  Nichia's arguments regarding the inclusion of this term are accordingly moot.



Fig. 9A

Fig. 9B

Nichia's contention is necessarily false as the embodiment of the alleged invention disclosed in Figures 9A and 9B contains a "recess 14" that is *circular in the shape.* As even Nichia cannot deny, a circle, by definition, does not have "one side" and "the other side." Rather, a circle is defined by a series of *points* that are equidistant from the center of the circle.[2] While Nichia's "one side" and "other side" construction may not have run afoul of those embodiments of the '589 patent where the "recess 14" is rectangular in shape, it specifically excludes the embodiment shown by Figures 9A and 9B where the "recess 14" is circular. Because Nichia's proposed construction necessarily excludes one of the preferred embodiments disclosed in the '589 patent, it cannot be correct. *See On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004) ("[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.").

Defendants' proposed construction, to the contrary, accounts for all the embodiments disclosed in the '589 patent, including the embodiment shown in Figures 9A and 9B, by making

---

[2]      *See* Exhibit A, Merriam-Webster's Collegiate Dictionary, p. 206 (defining a circle as "a closed plane curve every point of which is equidistant from a fixed point within the curve"); *see also* Exhibit. B, American Heritage Dictionary, p. 337 ("[a] plane curve everywhere equidistant from a given fixed point, the center").

clear that the wall "extends from *one point* on the perimeter of the recess *to another point* on the perimeter of the recess."  Defendants' construction accordingly "most naturally aligns with the patent's description of the invention" (*Phillips*, 415 F.3d at 1316), and should be adopted by the Court.

### 2.     "notch which is formed by cutting off a portion of an edge of the first lead electrode"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
| --- | --- |
| an indentation formed by a slicing operation subsequent to the formation of the lead electrode | a cut-out portion in an edge of the first lead electrode which is formed by cutting |

The dispute between Defendants and Nichia regarding this phrase is two-fold: (1) when the "cutting" step of the lead electrode to form the notch occurs; and (2) what constitutes "cutting."  Defendants' proposed construction is supported by the claim language and repeated references in the specification of the '589 patent.  Conversely, Nichia's proposed construction is supported by the uncorroborated testimony of its consultant – a form of extrinsic evidence that cannot be used to overcome the intrinsic evidence of the patent.[3]

### i.     The lead electrode must exist before the notch can be cut into it

The plain language of claims 1 and 6, where the disputed phrase appears, affirms that "the *first lead electrode has a notch* which is *formed by cutting* off a portion of *an edge of the first lead electrode* and located at least just below the wall."  It is common sense that the lead electrode must first exist before the notch can be "formed by cutting off a portion" of it.  This necessity is reinforced throughout the specification of the '589 patent, where the formation of the "lead electrode" is described:

---

[3]     As noted by the Federal Circuit, "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Phillips*, 415 F.3d at 1318.

> First, a metal sheet is punched through and metal plating is applied on the metal sheet thereby to make a lead frame 42.  The lead frame 42 has a pair of the first lead electrode 18 and the second lead electrode 20 formed thereon.  The first lead electrode 18 and the second lead electrode 20 are formed with a space kept therebetween.  Usually a number of pairs of the lead electrodes 18, 20 are formed on one metal sheet.

Col. 7, ll. 51-54.  As shown in this excerpt, a metal sheet is "punched" to create a "lead frame," which in turn contains a pair of "lead electrodes."  Subsequent to this step, the specification describes the formation of the notch.  *See e.g.*, col. 7, ll. 18-20 ("While the notch 36 is formed by cutting off a rectangular portion ***from the edge of the first lead electrode 18*** in FIG. 2A and FIG. 2B").  As clearly stated in the specification, the notch is formed by "cutting" (as opposed to punching) a rectangular portion ***from the edge of the first lead electrode*** – a lead electrode that was already formed by punching a lead frame from a metal sheet.

Additional portions of the intrinsic record highlight the stage at which the notch is cut from the lead electrode.  For example, instead of a "notch which is formed by cutting of a portion of an edge of the first lead electrode and located at least just below the wall" as in claims 1 and 6, claim 2 states that the first lead electrode has "a through hole located at least just below the wall."  Notably, there is no requirement the that the "through hole" be cut or otherwise formed in the lead electrode – only that the through hole exists (which arguably would encompass a scenario where the through hole is formed simultaneously with the lead electrode).  The specification further emphasizes this difference, stating that "[a]ccording to the present invention, the cut-out portion may have a form of notch ***formed by cutting off a portion of the edge of the first lead electrod***e, or a form of through hole ***formed in the first lead electrode***."  Col. 3, ll. 39-42 (emphasis added).

In the face of this clear intrinsic evidence, Nichia offers only the testimony of its consultant, who claims that "[o]ne of ordinary skill in the art would have understood that a cut-

out portion … could be formed, and in fact, frequently is formed, simultaneously with the lead electrode." Opening Brief, at 6. As noted above, this kind of unsupported extrinsic evidence cannot overcome the clear statements in the intrinsic record, and therefore the claims of Nichia's consultant should carry no weight.[4]

### ii. Cutting must be construed as something other than punching

As shown above, the specification of the '589 patent denotes a clear distinction between "*cutting* off a portion of an edge of the lead electrode" to make the notch (col. 3, ll. 15-16, emphasis added), and "*punch[ing]* through … the metal sheet thereby to make a lead frame." (col. 7, ll. 51-52 (emphasis added)). Defendants' proposed construction for cutting as "slicing" (as opposed to punching) therefore "most naturally aligns with the patent's description of the invention" (*Phillips*, 415 F.3d at 1316), and is accordingly correct. Rather than the intrinsic evidence, Nichia again cites to the testimony of its consultant, who claims that "'the term 'cutting,' in the field of LED manufacturing, includes both mechanical processes (e.g., stamping, punching) for removing a portion of the lead electrode and chemical processes (e.g., etching) for removing the portion of the lead electrode.'" Opening Brief, at 5. Nichia's proposed construction thus eliminates the difference between "cutting" and "punching" as set forth in the specification, based solely on the testimony of its consultant. As noted above, this kind of unsupported extrinsic evidence cannot be used to overcome a clear intrinsic record. *See Phillips*, 415 F.3d at 1318. Nichia's proposed construction is therefore improper and should be rejected.

---

[4]     *See Phillips*, 415 F.3d at 1318 ("[A] court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.") (internal quotation marks omitted).

### B.      The '870 Patent (Dkt. No. 52, Exhibit B)

### 1.      "adjacent to the side surface in the recess"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
| --- | --- |
| sharing an endpoint or border with the side surface in the recess | next to or lying near the side surface of the recess |

The parties dispute what it means to be "adjacent" to the "side surface in the recess." Defendants' proposed construction is consistent with and is in fact required by the claim language and the specification of the '870 patent.  Nichia's proposed construction, on the other hand, is ambiguous on its face and in context of the alleged invention, and is not supported by the intrinsic record.

Claims 1, 7, 35, and 36 of the '870 patent, each require, in relevant part:

a molded member having a recess formed therein with a bottom surface and a side surface;

a positive lead electrode ***partially disposed on the bottom surface*** and adjacent to the side surface in the recess ***and extending outwardly from said molded member***;

a negative lead electrode ***partially disposed on the bottom surface*** and adjacent to the side surface in the recess ***and extending outwardly from said molded member***;

As shown from the claim language above, the positive and negative lead electrodes are partially disposed on the bottom surface of the recess of the molded member and must "extend[] outwardly" therefrom.  Because of this configuration, the electrodes must necessarily "share an endpoint or border" with the side surface of the recess as the electrodes extend from the bottom surface of the recess "outwardly from said molded member."

The specification of the '870 patent supports this requirement as shown by Figures 5 and 10 (reproduced below).  Specifically, the positive (102, 102c) and negative (103, 103c) lead

electrodes share an endpoint or border with the side surface of the recess (120), which is annotated with the red circles:



In addition to the intrinsic record, the extrinsic evidence confirms that Defendants' construction – "sharing an endpoint or border with the side surface in the recess" – is correct. For example, Exhibit C, Merriam-Webster's Collegiate Dictionary, p. 14, defines "adjacent" as "having a common endpoint or border" and "having the vertex and one side in common." Similarly, and consistent with the specification, Exhibit D, American Heritage Dictionary, p. 2, defines "adjacent" as "next to; adjoining."[5]

Nichia's proposed construction is vague on its face, as the phrases "next to" and "lying near" are completely subjective. Such a proposed construction invites a situation where one expert claims that the lead electrodes are "next to" or "lying near" the side surface of the recess, and the opposing expert claims the opposite. Such a scenario would only serve to confuse the jury. The ambiguity of Nichia's proposed construction is made worse by the scale of the semiconductor disclosed in the '870 patent and the accused products. As admitted by Nichia in

---

[5]     *See also Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1375 (Fed. Cir. 2004) (holding that as a matter of law, "adjoining" means "touching").

Chapter 5 of its Tutorial, "an entire LED device is often times no more than a millimeter thick," and the components inside an LED device are often no more than 0.3 millimeters in size.  At that size, any component could be said to be "next to" or "lying near" another.[6]  Thus, Nichia's proposed construction should be rejected.

### 2.     "a wall portion"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| a distinct structure formed as part of the [resin housing] [7] molded package/molded member/device | a portion of the molded package/molded member/device |

The dispute regarding the phrase "wall portion" is whether the term "wall" should be *read-out of the construction*.  Defendants correctly recognize that all the words in a claim have meaning.  *See Merck & Co. v. Teva Pharms. USA, Inc*., 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so").  Conversely, Nichia proffers a construction that eliminates the term "wall" from the disputed phrase altogether, thereby permitting Nichia to point to any portion of the "molded package/molded member/device" at the infringement stage and call it a "wall."  Such an evisceration of a claim term is improper, and thus Nichia's proposed construction should be rejected.

---

[6]     The only intrinsic evidence cited by Nichia is a reference in the specification to the term "adjacent," not with regard to the lead electrodes and the side surface of the recess, but with regard to "'bonding region 103b which is adjacent to the bonding region 103a.'"  Opening Brief, at 7 (quoting col. 7, ll. 29-31).  Tellingly, Nichia offers no intrinsic support for its proposed construction with regard to the configuration of the elements that are actually at issue in this disputed phrase.

[7]     Despite Nichia's claims to the contrary, the parties agree that the term "resin housing" means the same thing as "molded package/molded member/device."  Indeed, even Nichia's Tutorial, Chapter 8, refers to the molded package/molded member/device as the "resin housing" or "resin package."  However, to eliminate what Defendants view as a non-issue with regard to this disputed phrase, Defendants are removing the phrase "resin housing" and substituting the phrase "molded package/molded member/device" in their proposed construction

In support of its argument that *any* portion of the "molded package/molded member/device" can be a "wall portion," Nichia cites to dependent claims 3, 5, 11, and 23, which each require that "'said wall portion is *integral* with said molded member.'" Opening Brief, at 8 (emphasis added).  Yet Nichia's argument defeats, rather than supports, its proposed construction.  Dependent claims 3, 5, 11, 23 each *add* the "integral" limitation to the "wall portion" phrase in independent claims 1 and 7.  Under the doctrine of claim differentiation, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."  *Phillips*, 415 F.3d at 1315. As such, the independent claims that include the "wall portion" phrase presumptively do not require the wall portion to be integral with the molded member.

While Nichia attempts to eliminate the "wall" term from the "wall portion" phrase, Defendants' proposed construction gives meaning to it.  Defendants' construction provides that while the "wall" may be "formed as part of the molded package/molded member/device," the wall must be a "distinct structure" from that package/member/device.  Put more plainly, the "wall portion" must be something other than the package/member/device, otherwise there would be no need for the "wall portion" limitation in the claim.  The fact that the "wall portion" must be something other than the package/member/device is shown with reference to the independent claims of the '870 patent.  For example, claim 1 recites:

> A molded package for a light emitting device comprising:
>
> ***a molded member having a recess formed therein with a bottom surface and a side surface***;
>
> a positive lead electrode partially disposed on the bottom surface and adjacent to the side surface in the recess and extending outwardly from said molded member;
>
> a negative lead electrode partially disposed on the bottom surface and adjacent to the side surface in the recess and extending outwardly from said molded member;

**wherein a portion of said positive lead electrode and a portion of said negative lead electrode in the recess are separated from each other by a wall portion,** wherein said wall portion extends inwardly in a direction toward a center of the recess.

This and the other claims in which the disputed phrase appears make clear that the "wall portion" is a "distinct structure" from the "molded package/molded member/device."  Nichia should not be allowed to eviscerate the "wall" limitation from the disputed phrase (thereby allowing them to call any portion of the package/member/device a "wall") and Defendants' proposed construction should therefore be adopted.

### 3.    "extends inwardly in a direction toward a center of the recess"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| has a longitudinal axis directed toward a point that is equally distant from <u>the sides or outer boundaries of</u> [every point on the perimeter][8] the recess | extends from the periphery of the recess in a direction toward a center of the recess |

For this phrase, the parties dispute how the wall portion "extends inwardly" and how many "centers" the recess can have.  Defendants' proposed construction is mandated by the language of the claim and is supported by the specification of the '870 patent.  Nichia's proposed construction, on the other hand, is so broad (especially in light of Nichia's construction for "wall portion") so as to allow Nichia to claim that this limitation is met by any portion of the molded package/molded member/device that exists in the recess.  More importantly, Nichia's proposed construction would render the claims in which this phrase appears indefinite, as Nichia's construction necessarily requires that the recess have *one or more* "centers."

---

[8]     Since submitting the Joint Claim Construction and Prehearing Statement (Dkt. No. 50), Defendants have determined that the definition of "center" in Defendants' proposed construction needed to be modified to account for a "recess" that is not circular in shape.  Defendants are accordingly removing the phrase "every point on the perimeter," and substituting the language "the sides or outer boundaries" to account for this possibility.  Nichia's arguments regarding Defendants' proposed construction limiting the shape of the recess to a circle are accordingly moot.

Defendants' construction is supported by the plain language of the claims.  For example, claim 1 states "wherein a portion of said positive lead electrode and a portion of said negative lead electrode in the recess are separated from each other by a wall portion, ***wherein said wall portion extends inwardly in a direction toward a center of the recess***."  Defendants' proposed construction follows from the express wording of the claims, which requires some axis of the wall to ***extend*** towards the center of the recess.  Because the claim requires this extension towards the center of the recess, the axis of the wall that must so extend is the *longitudinal axis*.[9]

The language of the claim also requires that the wall extend towards "***a*** center" of the recess.  It is well established that the meaning of the indefinite article "a" in open-ended claims (claims that utilize the transition "comprising") be construed as "one or more"  *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) ("That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention.").  As every shape can have only one true "center," the claims' inclusion of the phrase "toward ***a*** center," and by rule "one or more center[s]," renders the claims in which this phrase appears indefinite, as it would be impossible for one of ordinary skill in the art to identify more than "one or more center[s]" of the recess.  As claims should be construed, if possible, to preserve their validity (*see Vistan Corp. v. Fadei USA, Inc*., 2012 WL 1496099, *10 (N.D. Cal. Apr. 27, 2012)), it is necessary to define "a center" as "a point that is equally distant from the sides or outer boundaries of the recess."[10]

Defendants' construction is also supported by the specification of the '870 patent.  For example, Figure 5, reproduced below, is annotated with a red arrow that indicates the inward

---

[9]     *See* Exhibit E, Merriam-Webster's Collegiate Dictionary, p. 685 ("of or relating to length or the lengthwise dimension"); *see also* Exhibit F, American Heritage Dictionary, p. 1031 ("Of or relating to longitude or length").

[10]     *See* Exhibit G, The definition of "center" is taken nearly verbatim from the American Heritage Dictionary, Fourth Edition, p. 301, which defines "center"  as "a point or place that is equally distant from the sides or outer boundaries of something; the middle."

extension of the wall portion (104), which is separating the positive and negative lead electrodes (as required by the claim language), along the longitudinal axis of the wall towards the center of the recess:



FIG. 5

As Defendants' proposed construction is required by the language of the claims to preserve their validity and is supported by the specification of the '870 patent, it should be adopted by the Court.

Nichia's proposed construction, on the other hand, is so broad (especially in light of Nichia's construction for "wall portion") so as to allow Nichia to claim that this limitation is met by any portion of the molded package/molded member/device that exists in the recess.  This fact is shown by Nichia's statement that the "wall portion 104 … forms a ring around light emitting element 108.  It is unclear how the wall portion 104 in the [Figure 5] has a longitudinal axis." Opening Brief, at 10.  Nichia's statement reveals that it is ignoring the language of each of claims 1 and 7, which require the wall to "*separat[e] at least one of said positive lead electrode and said negative lead electrode into two parts in the recess*, wherein said wall portion extends inwardly in a direction toward a center of the recess."  As shown above, the only portion of the

13

"wall" that separates the electrodes is the portion referenced with the red arrow, which has a longitudinal axis that extends towards the center of the recess.[11]

### 4. "means for electrically connecting said light emitting element to said positive lead electrode…[and] to said negative lead electrode"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| <u>Function</u>:  electrically connecting said light emitting element to said positive lead electrode… [and] to said negative lead electrode.<br><br><u>Corresponding structure</u>:  two or more conductive wires, where the height of the wall portion is greater than the height of the two conductive wires, and equivalents thereof. | the structure disclosed in the specification for performing the recited function (i.e., electrically connecting said light emitting element to said positive lead electrode…[and] to said negative lead electrode) is a conductive material including at least one or more of a conductive wire, a bump, a resin or glass containing conductive material, and a conductive paste, and the equivalents thereof. |

The parties agree that the disputed phrase should be governed by 35 U.S.C. § 112, ¶ 6, and the parties further agree that the recited function of this limitation is "electrically connecting said light emitting element to said positive lead electrode … [and] to said negative lead electrode."  Defendants' propose a corresponding structure that is specifically disclosed in the specification and that is clearly linked to the recited function.  Nichia's corresponding structure, however, includes structure that is not even related to "electrically connecting said light element to said … electrode[s]."

Structure that merely enables other structure to perform the recited function is not a corresponding structure.  *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1371 (Fed. Cir. 2001).  Furthermore, structure disclosed in the specification must be "clearly linked" to the function recited in the claim.  *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311-1313 (Fed. Cir. 2001).  Several of the components identified by Nichia are not necessary to

---

[11]      More importantly than ignoring the claim language, Nichia's proposed construction fails to address the "*a* center" issue and in fact incorporates the indefinite article "a" into the proposed construction rendering claims 1, 7, 35 and 36 indefinite.  As claims should be construed to preserve their validity (*see Vistan Corp.*, JCS, 2012 WL 1496099, *10), Nichia's proposed construction should be rejected.

perform the recited function, nor are they clearly linked to that function in the specification.  For example, the "resin or glass containing conductive material" claimed by Nichia is actually related to **die bonding**.  Col. 29, ll. 30-33 ("Here, the cementing material used in die bonding is not specifically limited and … resin or glass containing conductive material, or the like, can be used.").  As even Nichia cannot deny, die bonding refers to the process of **bonding the light emitting element to the substrate**, not "electrically connecting said light emitting element to said … lead electrode[s]."  For at least this reason, Nichia's proposed construction is improper, and should be rejected by the Court.

Defendants' proposed construction, on the other hand, includes only those corresponding structures that are necessary to perform the recited function, and that are clearly linked to that function in the specification.  *See, e.g.*, col. 3, ll. 11-13 ("[A] fourth member electrically connects the light emitting element and the second member, the light emitting element, and the third member respectively, wherein the second member and third member is divided into two portions by a wall portion."); col. 3, ll. 28-31 ("The fourth member is preferably a conductive wire which is located below the top surface of the wall portion.  That is, the height of the wall portion is preferably higher than the conductive wires.").

Nichia contends that dependent claims 14 and 26 include a limitation requiring the conductive wires to be disposed below a top surface of the wall portion.  Opening Brief, at 11.  To the extent Nichia is attempting to make a claim differentiation argument, that doctrine cannot overcome the statutory requirements of 35 U.S.C. § 112, ¶ 6.[12]  *Laitram Corp. v. Rexnord, Inc.*,

---

[12]     Nichia also claims that "Figs. 10 and 11 … show a height of a wall portion 104 being less than the height of a conductive wire 109."  Opening Brief, at 11.  Nichia's argument misses the mark, as the Figures in the '870 patent are clearly not drawn to scale, and such a configuration runs counter to the express disclosures in the specification and the claims.

939 F.2d 1533, 1538 (Fed. Cir. 1991).  Accordingly, Defendants' proposed construction for this means-plus-function term is proper, and should be adopted by the Court.

### 5. "a protective element…to protect said light emitting element from overvoltage"

In an effort to streamline the claim construction process, Defendants are withdrawing their proposed construction for this phrase.  As Nichia has not proposed a counter-construction, Defendants contend that this phrase should be given its plain and ordinary meaning.

### C. The '863 Patent (Dkt. No. 52, Exhibit C)

### 1. "top surface"

| Terms to be Construed | Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|---|
| top surface of the metal member | Plain and ordinary meaning. No construction necessary. | uppermost surface of the metal member |
| top surface of the insulating board | Plain and ordinary meaning. No construction necessary. | uppermost surface of the insulating board |
| top surface of the substantially stepped rectangle of the metal member | Plain and ordinary meaning. No construction necessary. | uppermost surface of the substantially stepped rectangle of the metal member |

While Nichia identifies the three phrases above that it contends require construction, Nichia states in its Opening Brief that it is actually construing the phrase "top surface."  Opening Brief, at 14 ("the phrase 'top surface' should be construed as the 'uppermost surface'").  However, as shown from Nichia's proposed constructions above, Nichia is really only construing the word "top."  Yet Nichia has failed to articulate a reason why it is necessary to construe the word "top," or why the jury would require such a seemingly simple word to be construed.  As noted by Nichia in its Opening Brief, "'district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims'" (*id*. at 28, quoting *O2 Micro Int'l*

16

*Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)), and "[c]laim construction 'is not an obligatory exercise in redundancy.'" (*id.*, quoting *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Nichia's proposed construction of "top" as "uppermost" (which appears nowhere in the claims or specification of the '863 patent) is no more descriptive or clear than the word "top."  Indeed, Nichia admits that it merely selected a synonym for the word "top" out of a dictionary.  Opening Brief, at 15 ("'Top' is defined as 'the <u>highest</u> point, level or part of something; of, relating to, or being at the top:  <u>UPPERMOST</u>.") (emphasis in original).  As Nichia has not shown any reason why it is necessary to construe the word "top," and as Nichia has offered no proposed construction for the other terms in the above-identified phrases, the Court should refuse to perform "an obligatory exercise in redundancy," and refuse Nichia's request to construe what is otherwise a simple and readily-understandable term.

### 2. "a transparent member that covers the light emitting element and the top surface of the insulating board"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| Plain and ordinary meaning.  No construction necessary.[13] | a transparent member that is over at least some of the surface of the light emitting element and the uppermost surface of the insulating board |

It is clear that this phrase should be given its plan and ordinary meaning, as Nichia's only substantive proposal is to import limitations from the specification into the claims where this phrase appears.  It is a bedrock principle of claim construction that one may not import limitations from the specification into the claims.  *See SuperGuide Corp. v. DirecTV Enterprises,*

---

[13]   Since submitting the Joint Claim Construction and Prehearing Statement (Dkt. No. 50), Defendants have determined that this phrase is clear and unambiguous and therefore should be given its plain and ordinary meaning and does not require construction by the Court.  Nichia's arguments regarding Defendants' proposed construction of this phrase are accordingly moot.

*Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("[I]t is important not to import into a claim limitations that are not a part of the claim.  For example, a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment.").  As will be shown below, that is exactly what Nichia attempts to do here.

While Nichia contends that the claim language "requires the transparent member to ***at least partially cover*** the identified components" (Opening Brief, at 15 (emphasis added)), the claims have no such ***partiality*** requirement.  All that is required by the plain language of the claims is that the transparent member "***covers*** the light emitting element and the tops surface of the insulating board."  The fact that Nichia is importing limitations from the specification into the claims is apparent from Nichia's Opening Brief, as Nichia states that "Figures 1 … and 3 … clearly show the transparent member is over ***at least some of*** the surface of the light emitting element and the uppermost[14] surface of the insulating board.  The specification also discloses that the transparent member must cover ***at least some, but not necessarily all,*** of the top surface of the insulating board." *Id.* at 16 (emphasis added).  Again, the language of the claims is clear, and Nichia's attempt to import the "at least some of" language from the specification into this phrase is also clear.

3.     "the through hole of the insulating board has an inner wall that is formed in a substantially stepped rectangle corresponding to the substantially stepped rectangle of the metal member"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| the through hole of the insulating board has an inner wall formed in a substantially stepped rectangle that is identical in shape to the substantially stepped rectangle of the metal member | the through hole of the insulating board has an inner wall formed in a substantially stepped rectangle that is similar in form to the shape of the substantially stepped rectangle of the metal member |

---

[14]     Nichia's attempt to construe the term "top" as "uppermost" is addressed in the preceding section and is unnecessary and improper for all the reasons stated above.

The only dispute regarding this phrase is how the substantially stepped rectangular shape of the inner wall of the insulating board "correspond[s] to" the substantially stepped rectangular shape of the metal member.  Defendants' proposed construction provides a definitive and straight-forward guide to the jury to determine the issues of infringement and validity and is supported by the specification of the '863 patent.  Nichia's proposed construction, to the contrary, is ambiguous on its face and in application, and invites confusion by the jury regarding what qualifies as "similar in form."

Defendants propose that the inner wall of the insulating board is a substantially-stepped rectangle that is ***identical*** in shape to the substantially-stepped rectangle of the metal member. This construction is fully supported by the specification.  For example, Figure 9 (reproduced and annotated below) shows the relationship of the through hole of the insulating board (40) with the shape of the metal member (30):

FIG. 9



As is readily apparent from this Figure, the inner wall of the insulating board (40) has an ***identical*** substantially-stepped shape as the metal member (30) such that the two can be nested together.  This identical configuration is described further in the specification.  *See* col. 8, ll. 27-32 ("Particularly, in the case where the metal member 30 has a substantially stepped rectangle in

19

a cross-sectional view …, the through hole has an inner wall that is also formed in a substantially stepped rectangle."); col. 12, ll. 41-44 ("In this example, copper bodies that have a shape corresponding to but one size smaller than the shape of the aforementioned through hole are used as the metal members.").  As shown by these excerpts, the corresponding shapes are identical – the only difference being the size of the two components so that they can be nested together.

In addition to being supported by the intrinsic record, Defendants' proposed construction is also supported by the plain and ordinary meaning of the term "correspond," which is defined as "to be in conformity or agreement."  Exhibit H, Merriam-Webster's Collegiate Dictionary, pg. 260.  Thus, Defendants' proposed construction is fully supported by the intrinsic record and extrinsic evidence and is clear enough to allow the jury to determine the key issues in the case.

### D.  The '250 Patent (Dkt. No. 52, Exhibit D)

#### 1.  The preambles of claims 1 and 17 are not claim limitations

| Defendants' Proposed Construction | Nichia's Proposed Construction |
| --- | --- |
| The preambles of claims 1 and 17 are not claim limitations.<br><br>Plain and ordinary meaning.  No construction necessary. | Claim 1 is limited to a method for manufacturing a light emitting device.<br><br>Claim 17 is limited to a light emitting device. |

The preambles of claims 1 and 17 of the '250 patent are not claim limitations.  A preamble is only limiting when it is "necessary to give life, meaning, and vitality to the claims." *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).  "A preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'"  *Id.* (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)).  As will be shown below, the preambles of claims 1 and 17 are not necessary to give "life meaning, and vitality" to the claims, and the bodies of those claims "define[] structurally complete invention[s]."

The bodies of claims 1 and 17 contain "complete and exacting structural detail," and do not depend on their respective preambles (or the inclusion of a "light emitting device") for completeness. *Catalina*, 289 F.3d at 809. This is shown by the fact that none of the limitations from either claim 1 or 17 even reference a "light emitting device."[15] ***In fact, there is no reference whatsoever in claims 1 or 17 to any component capable of emitting light***. The only appearance of such a "light emitting element" limitation is claim 7, which states, "[t]he method according to claim 1, further comprising: providing *a light emitting element* in a concave portion of the resin package …." (emphasis added). Importantly, ***there is no claim dependent on claim 17 (the apparatus claim) that includes a "light emitting element."*** As such, the preambles are clearly not "essential to understand limitations or terms in the claim body" *Id*. at 808[16]

### 2. "lead"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| the conductive portion of the [LED] <u>device</u>[17] that makes an electrical connection to a structure outside of the [LED] <u>device</u> | lead for a light emitting device |

The parties agree that the term "lead" should be construed. Despite this agreement, Nichia does not actually propose a construction; rather it simply takes the term "lead" and tacks on language from the preambles of claim 1 and 17. However, as noted by Nichia, "[t]he term

---

[15]    The fact that none of the terms or phases in the body of either claim 1 or claim 17 derive antecedent basis from their respective preambles is yet another indicator that the preambles are not limiting. *See Catalina*, 289 F.3d at 808-809.

[16]    Further evidence that the preambles are not "essential" is the fact that Nichia has not claimed that the same or substantially similar preambles appearing in other of the patents-in-suit are limiting. *See, e.g.*, claim 7 and 36 of the '870 patent (both reciting "[a] light emitting device comprising …") and claims 1 and 2 of the '863 patent (both reciting "[a] light emitting device comprising …").

[17]    Since submitting the Joint Claim Construction and Prehearing Statement (Dkt. No. 50), and in light of the fact that term "lead" appears in claims that do not recite a "light emitting device," Defendants have removed the term "LED" and replaced it with the term "device" to more accurately reflect the scope of all the claims of the '250 patent in which this term appears.

'lead' is recited in claims 1, 2, 15, 17-19, 21, 22, 27, 29, and 31."  Opening Brief, at 20.  Several

of those claims, for example claims 27, 39, and 31, are not limited to "light emitting devices,"

but instead claim "resin packages" and resin-molded bodies."   Nichia is accordingly trying to

limit *all* of the claims where the term "lead" appears to "a light emitting device," a practice

which is *per se* improper.[18]  Nichia's not-so-subtle attempt to get a second bite at the "preamble"

argument apple should accordingly be rejected by the Court.

As opposed to Nichia's, Defendants' proposed construction actually includes a definition

for the disputed term, and is supported by *all* the claims and the specification.  For example, the

specification of the '250 patent states that the resin package has a "positive lead" and a "negative

lead."  Col. 4, ll. 4-10.  The "positive lead" and "negative lead" are the portions of the device that

conducts electricity to power the device.   Nichia Tutorial, Chapter 5.   And since the

semiconductor element in the device is not self-powered, the semiconductor element must be

connected to some power source through these leads.  *Id.*

Nichia attacks Defendants' proposed construction and claims that "it is not clear if

Defendants' proposed construction requires that the lead actually make a connection to a

structure outside of the LED to infringe, or merely requires that it is *capable* of making such a

connection."  Opening Brief, at 21 (emphasis in original).  This argument is a red herring, as the

plain language of Defendants' proposed construction, and specifically the phrase "the conductive

portion of the device ***that makes*** an electrical connection," clearly indicates that the "lead" is that

portion of the device that is *capable* of making the electrical connection (otherwise the

construction would read something like, "the conduction portion of the device ***that is making*** an

electrical connection").

---

[18]      *See SuperGuide*, 358 F.3d at 875 ("[I]t is important not to import into a claim limitations that are not a part
of the claim.  For example, a particular embodiment appearing in the written description may not be read into a
claim when the claim language is broader than the embodiment.").

22

Nichia further complains that "there is no support in either the claim language or the specification for requiring the lead to be 'a conductive portion of the [device]' or for the lead to make 'an electrical connection to a structure outside of the [device].'"  With regard to Nichia's first argument, the specification explicitly states that "[t]he lead frame [from which the lead is formed] is formed using an electrical [sic] good conductor such as iron, phosphor bronze or a copper alloy."   Col. 9, ll. 21-22.   The fact that the "lead" portion of the device conducts electricity is therefore fully supported by the specification.   With regard to Nichia's second argument, the fact that the "lead" makes an electrical connection "to a structure outside of the device" is again fully supported by the nature of the design of the device as set forth in the specification.   *See* col. 6, ll. 32-34 ("In the resin package 20, the leads 22 are exposed from the four corners.  The leads 22 are exposed in the outer side surfaces 20b, and are not subject to the plating processing.").   Thus, Defendants' proposed construction, which actually offers a definition for the term "lead," is fully supported by the specification of the '250 patent, and should be adopted by the Court.[19]

### 3.    "lead frame," "resin," "resin part," "resin package," and "resin-molded body"

| Terms to be Construed | Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|---|
| lead frame | Plain and ordinary meaning.  No construction necessary | lead frame that is used during manufacture of light emitting devices |
| "resin" | Plain and ordinary meaning.  No construction necessary. | resin suitable for use in a light emitting device |

---

[19]     To the contrary, Nichia's only evidence is the opinion of its consultant, who rather than offer testimony regarding the underlying technology, instead opines on what he considers to be the correct construction for this term. *See* Opening Brief, at 22 ("Therefore, it is my opinion that Defendant's proposed construction is improper.") As noted by the Federal Circuit, "expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court." *Phillips*, 415 F.3d at 1318.

| resin part | Plain and ordinary meaning.  No Construction necessary. | resin part for a light emitting device |
| resin package | Plain and ordinary meaning.  No Construction necessary. | resin package for a light emitting device |
| resin-molded body | Plain and ordinary meaning.  No Construction necessary. | resin-molded body that is formed during manufacture of light emitting devices |

Nichia does not offer legitimate constructions for any of the disputed terms and phrases above.  Rather, just as with the disputed term "lead" discussed above, Nichia simply takes the term or phrase in dispute and tacks on additional language from the preambles of claim 1 and 17.  As noted above, Nichia's attempt to import limitations from the specification into each of the disputed terms and phrases is *per se* improper (especially as all of these terms appear in claims that do not require a "light emitting device").  *See SuperGuide*, 358 F.3d at 875.  For all the reasons discussed above with regard to the disputed term "lead," Nichia's claim constructions for the present disputed terms and phrases should be rejected, and the present terms and phrases should be given their plain and ordinary meaning.

### 4.    "the at least one lead comprises a step on a bottom surface or outer surface thereof"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| Plain and ordinary meaning. No Construction necessary. | the at least one lead has an indentation formed on an exposed portion of a bottom surface or outer surface of the lead |

Nichia has failed to offer a reason why the Court and the jury can't understand the term "step," and why the synonym "indentation" is any clearer to the trier of fact.  As noted by Nichia in its Opening Brief, "[c]laim construction 'is not an obligatory exercise in redundancy.'" *Id*. at 28 (quoting *U.S. Surgical*, 103 F.3d at 1568).  The Court should accordingly refuse Nichia's

24

request to construe what is otherwise a simple and readily-understandable term, and give this phrase its plan and ordinary meaning.

    5.    **"a portion of the resin part is disposed over a portion of the plating on the upper surface of the at least one lead"**

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| Plain and ordinary meaning.  No construction necessary. | the resin part covers partially, but not completely, the plating on the upper surface of the at least one lead |

As with several of the disputed terms and phrases above, Nichia again does not offer a construction for this disputed phrase.  Rather, Nichia seeks to import a negative limitation from the specification ("covers partially, but not completely") into the plain and ordinary meaning of the claims.  As noted repeatedly in response to Nichia's proposed constructions, importing limitations from the specification into claim terms is *per se* improper.  *See SuperGuide*, 358 F.3d at 875.

If that weren't bad enough, Nichia's proposed construction is contrary to one of the most cannons of claim construction.  Specifically, both claims 17 and 29, where this phrase appears, contain the transitional term "comprising."  The transitional term "comprising" is an open phrase and allows coverage of technologies that employ additional and unrecited elements.  *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007).  As such, the disputed phrase above refers to a scenario where "a portion [*or all*] of the resin part is disposed over a portion [*or all*] of the plating on the upper surface of the at least one lead."  For at least these reasons, the Court should reject Nichia's proposed construction and give this phrase its plain and ordinary meaning.

### 6. "notch"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| a cavity that penetrates the lead frame and that will be filled with resin | opening |

Defendants' proposed construction for this term is necessary to distinguish between the claimed "notch" and the also-claimed "hole." For example, claim 1 of the '250 patent requires "a lead frame comprising at least one notch," while claim 3, which depends from claim 1, further requires "the lead frame further comprising at least one hole." As such, the "notch" in the lead frame is different than the "hole," and this difference must be accounted for with a claim construction that distinguishes the two for the jury.

Defendants' proposed construction provides that distinction, with language that is fully supported by the specification. For instance, the specification of the '250 patent explicitly sets forth the difference between a "notch" and a "hole, where it states, "the difference is that, while the thermosetting resin is filled in the notch parts, the thermosetting resin is not filled in hole parts which are described later. While the notch parts and hole parts penetrate the lead frame, grooves which are described later do not penetrate the lead frame." Col. 3, ll. 35-40.[20] As shown from this excerpt, Defendants' proposed construction mirrors the disclosed distinction between the claimed "notch" and the "hole." Nichia's proposed construction, to the contrary, ignores this difference, and will only lead to confusion for the jury as to what is a "notch" and what is a "hole" (which is also an "opening").

---

[20]  "[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. Such a case exists here, where the specification sets forth a special definition for the term "notch," to distinguish it from the also-claimed "hole."

### 7.    "cutting the resin-molded body and the plated lead frame along the at least one notch"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| slicing the resin molded body and the plated lead frame in the same step along the at least one notch | Plain and ordinary meaning |

For this phrase, the parties apparently dispute the timing of the cutting step, and what constitutes cutting.[21]  Defendants' proposed construction as it relates to the timing of the cutting step is consistent with the plain language of the claims.  For example, claim 1, which states "cutting the resin-molded body **and** the plated lead frame along the at least one notch," requires that the same "cutting" step to cut both the "resin molded body **and** the plated lead frame along the at least one notch."  Defendants' proposed construction is further supported by the specification of the '250 patent.  For instance, the specification provides as follows with regard to when the resin body and lead frame are cut:

> The resin package has an outer bottom surface, outer side surfaces and an outer upper surface. The leads are exposed from the outer side surfaces of the resin package. The resin part and leads are formed in the substantially same plane. ***This substantially same plane means that the resin part and leads are formed in the same cutting step***.

Col. 7, ll. 47-52 (emphasis added).  As such, the language of the claims requires, and the specification of the '250 patent supports, Defendants' proposed construction which makes clear that the cutting of the resin molded body and the plated lead frame must occur in the same step along the at least one notch.

Defendants' construction as it relates to the definition of "cutting" is also supported by the specification of the '250 patent, and is necessary to distinguish "cutting" from "punching" or

---

[21]    Defendants arguments and support for construing "cutting" as slicing" is set forth above in Section III.A.2.ii., which is incorporated herein by reference.

"etching."  For example, the specification describes "punching" or "etching" the lead frame from

a sheet of metal as follows:

> The lead frame is formed by, for example, ***punching*** or ***etching*** a metal plate of a flat plate shape.
>
> …
>
> By contrast with this, the method of ***punching*** a metal plate of a flat plate shape increases cost required for replacement parts due to friction of a mold resulting from the ***punching***, and increases cost required for manufacturing the lead frame.  By contrast with this, with ***etching***, a ***punching*** mold is not used, so that it is possible to manufacture a lead frame per package at low cost when the number of packages cut from one frame is greater.

Col. 8, l. 49—col. 9, l. 3.  Conversely, the specification describes "cutting" the resin package as

follows:

> The notch parts are formed such that a pair of positive and negative leads are provided when the resin-molded body is ***singulated*** to the resin package. The notch parts are formed such that the area for ***cutting*** the leads is reduced when the resin-molded body is ***cut***.  For example, the notch parts are provided in a horizontal direction such that a pair of positive and negative leads are provided, and further notch parts are provided in positions corresponding to cut-out parts for ***singulating*** the resin-molded body.  Meanwhile, part of the lead frame is jointed such that part of the lead frame does not drop or the leads are exposed in the outer side surfaces of the resin package. To ***singulate*** the resin-molded body ***using a singulation saw***, the notch parts are preferably formed vertically and horizontally or linearly in an oblique direction.

Col. 9, ll. 7-20.  As shown from these excerpts, the specification differentiates between cutting

(using a singulation saw) and punching or etching.  Thus, Defendants' proposed construction of

cutting as "slicing" is fully supported by the specification and is necessary to distinguish that

process from punching or etching.

> ### 8.      "planar"

| Defendants' Proposed Construction | Nichia's Proposed Construction |
|---|---|
| no measurable surface variation | [formed] in substantially the same plane |

Defendants' proposed construction for the term "planar" is supported by the plain

language of the claims in which it appears.  Claim 1, for example, requires "the cutting step

28

being performed such that an outer surface of the resin part and an outer surface of the at least one lead are ***planar*** at an outer side surface of the resin package." Claim 1 accordingly requires that the outer surfaces of the "resin part" and "at least one lead" *to be planar – not substantially planar*, as Nichia's proposed construction suggests.

The distinction between "planar" and "substantially planar" is made clear in the specification of the '250 patent, which recites a range of embodiments that are "substantially planar." For instance, and as Nichia admits, the specification states that "a resin part and a lead frame are formed in ***a substantially same plane*** in an outer side surface." Col. 2, l. 63—col. 3, l.1 (emphasis added). Clearly, had the patentee wanted to claim that the outer surfaces of the "resin part" and the "at least one lead" were "substantially planar" or "formed in substantially the same plane," the patentee knew how to do so. Instead, the patentee chose to require that the two surfaces be "planar" – and the construction of this disputed term must account for that decision.

In addition to the intrinsic record, the extrinsic evidence supports Defendants' proposed construction.[22] None of the definitions cited by either side support the notion that the plain and ordinary meaning of "planar" is "***substantially*** in the same plane"; in fact, as shown above, the opposite is true. Defendants' proposed construction should accordingly be adopted.

### 9. The phrase "light reflecting material" is indefinite

The phrase "light reflecting material" (appearing in claims 1, 27, and 31) render those claims indefinite because this phrase "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2123 (2014). Nichia contends that "one of ordinary skill in the art would have readily

---

[22]    For instance, Exhibit I, Merriam-Webster's Collegiate Dictionary, p. 886, defines the term "planar" as "of, relating to, or lying *in a plane*" or "*two-dimensional in quality*." (emphasis added). Similarly, Exhibit J, The American Heritage Dictionary, p. 1341, defines "planar" as of, relating to, or situated *in a plane*" or "flat: *a planar surface*" or "having a *two-dimensional characteristic*." (emphasis added).

understood that the phrase  … simply means material that reflects light."  Opening Brief, at 30. The problem with this phrase, and the meaning as subscribed by Nichia, is that ***every material that is visible reflects light*** – the reason it is visible is because it reflects light.[23]  As such, the "scope of the invention" cannot be understood with reasonable certainty by one of ordinary skill, as every visible material in existence is encompassed by this phrase.  As noted by the Supreme Court, a patent "must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them."  *Nautilus*, 134 S. Ct. at 2129 (internal quotation marks omitted).  The phrase "light reflective material" fails to do that, and is therefore indefinite.

## IV.   CONCLUSION

For all the reasons set forth above, Defendants respectfully request that the Court adopt Defendants' constructions of the disputed claim terms, and moreover find the phrase "light reflecting material" indefinite.

---

[23]    *See* Exhibit K, The Physics Classroom, Light Absorption, Reflection, and Transmission, http://www.physicsclassroom.com/class/refln/Lesson-1/The-Role-of-Light-to-Sight (The bottom line is: without light, there would be no sight. The visual ability of humans and other animals is the result of the complex interaction of light, eyes and brain. We are able to see because light from an object can move through space and reach our eyes.).

Dated:  October 6, 2014

Respectfully submitted,

*/s/ Tyler T. VanHoutan*
Tyler T. VanHoutan
  Email:  tvanhoutan@winston.com
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242
Telephone:   (713) 651-2600
Facsimile:    (713) 651-2700

Michael A. Tomasulo (*pro hac vice*)
  Email:  mtomasulo@winston.com
Gino Cheng (*pro hac vice*)
  Email:  gcheng@winston.com
David K. Lin (*pro hac vice*)
  Email:  dlin@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

Michael L. Brody (*pro hac vice*)
  Email:  mbrody@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:   (312) 558-5600
Facsimile:    (213) 558-5700

Melissa R. Smith
  Email:  melissa@gillamsmithlaw.com
Bobby Lamb
 Email:  wrlamb@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX  75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

ATTORNEYS FOR
DEFENDANTS/COUNTERCLAIMANTS
EVERLIGHT ELECTRONICS CO., LTD.,
EVERLIGHT AMERICAS, INC., ZENARO
LIGHTING, INC., and ZITROZ

31

## **CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 6, 2014.

*/s/ Tyler T. VanHoutan*
Tyler T. VanHoutan